CASE NO. 24-3522

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**UNITED STATES OF AMERICA,**

*Plaintiff-Appellee,*

v.

**MARIO TAYLOR,**

*Defendant-Appellant.*

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
_____

**BRIEF OF APPELLANT Mario Taylor**
_____


STEPHEN C. NEWMAN
Federal Public Defender
Ohio Bar: 0051928

ANDREW BYRD
Attorney at Law
Florida Bar: 118587
Office of the Federal Public Defender
1660 W. 2nd Street, Suite 750
Cleveland, Ohio 44113
(216) 522-4856
andrew_byrd@fd.org

*Counsel for Defendant-Appellant Mario Taylor*

# TABLE OF CONTENTS

Table of Authorities................................................................................ii

Statement Regarding Oral Argument ......................................................iv

Jurisdictional Statement ..........................................................................1

Issue Presented for Review ......................................................................2

Statement of the Case and Facts..............................................................3

Summary of the Argument.....................................................................13

Argument................................................................................................16

   I.    United States Sentencing Guidelines § 1B1.13(b)(6) is binding law.............16

      A.   Standard of Review .................................................................16

      B.   The Supreme Court affords broad discretion to sentencing courts in considering motions for early release...................................................16

      C.   Guidelines § 1B1.13(b)(6) is a valid exercise of the Commission's expressly delegated authority ...............................................................21

Conclusion.............................................................................................27

Certificates of Service and Conformity................................................28

Designation of Relevant District Court Documents..............................29

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Andrews v. United States*, 142 S. Ct. 1446 (2002) .................................................22

*Braxton v. United States*, 500 U.S. 344 (1991) ..........................................20, 21, 22

*Chapman v. United States*, 500 U.S. 453 (1991) ...................................................24

*Concepcion v. United States*, 597 U.S. 481 (2022) ..........................................17, 18

*Crandall v. United States*, 142 S. Ct. 2781 (2022) ...............................................22

*Jarvis. United States*, 142 S. Ct. 760 (2022) ........................................................6

*Jarvis v. United States*, No. 21-568, 2021 WL 5864543
    (U.S. Dec. 8, 2021) ..........................................................................6

*Mistretta v. United States*, 488 U.S. 361 (1989) ...................................................20

*National Cable & Telecommunications Association v. Brand X Internet
    Services*, 545 U.S. 967 (2005)........................................................22

*Neal v. United States*, 516 U.S. 284 (1996) .....................................................23, 24

*Stinson v. United States*, 508 U.S. 36 (1993) ........................................................22

*Thacker v. United States*, 142 S. Ct. 1363 (2022) ................................................22

*United States v. Andrews*, 12 F.4th 255 (3d Cir. 2021)...........................................6

*United States v. Cornell*, No. 1:03-CR-00431-2, 2024 WL 3532924
    (N.D. Ohio July 25, 2024)...............................................................25

*United States v. Crandall*, 25 F.4th 528 (8th Cir. 2022) ........................................6

*United States v. Crandall*, No. 20-3611, ECF No. 16 (8th Cir.
    filed Mar. 25, 2021) .......................................................................6

*United States v. Curry*, 606 F.3d 323 (6th Cir. 2010) ............................................16

*United States v. Henry*, 983 F.3d 214 (6th Cir. 2020)..............................................16

*United States v. Jean*, No. 23-40463, 2024 WL 3409145
    (5th Cir. July 15, 2024) ........................................................................6, 20, 23

*United States v. Jenkins,* 50 F.4th 1185 (D.C. Cir. 2022) ........................................6

*United States v. Jones*, 980 F.3d. 1098 (6th Cir. 2020)............................................6

*United States v. King*, 40 F.4th 594 (7th Cir. 2022)................................................18

*United States v. McCall*, 56 F.4th 1048 (6th Cir. 2022)...................................*passim*

*United States v. McCoy*, 981 F.3d 271 (4th Cir. 2020) ............................................6

*United States v. McMaryion*, 64 F.4th 257 (5th Cir. 2023) .....................................6

*United States v. McMaryion*, No. 21-50450, 2023 WL 4118015
    (5th Cir. June 22, 2023) ...................................................................................6

*United States v. Palos*, 978 F.3d 373 (6th Cir. 2020) .............................................11

*United States v. Ruvalcaba*, 26 F.4th 14 (1st Cir. 2022).....................................6, 19

*United States v. Taylor*, Case No. 07-3735 (6th Cir. June 15, 2009).................8, 10

*United States v. Thacker*, 4 F.4th 569, 573–74 (7th Cir. 2021) ...............................6

## FEDERAL STATUTES

18 U.S.C. § 3231 .......................................................................................................1

18 U.S.C. § 3553 ........................................................................................4, 10, 26

18 U.S.C. § 3582 ...............................................................................................*passim*

21 U.S.C. § 841 ....................................................................................................7, 8

21 U.S.C. § 841 (1996)......................................................................9

21 U.S.C. § 841 (2018)......................................................................9

21 U.S.C. § 846 ................................................................................7

21 U.S.C. § 851 ................................................................................8

21 U.S.C. § 851 (1996)......................................................................9

21 U.S.C. § 851 (2018)......................................................................9

28 U.S.C. § 994 ..........................................................................5, 21

28 U.S.C. § 1291 .............................................................................1

## STATE STATUTES

Ohio Rev Code ann. § 2923.03(A)(1) ...............................................11

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. § 1B1.13(b)(6)............................................................*passim*

U.S.S.G. § 4A1.2(a)(2)....................................................................11

U.S.S.G. § 4B1.2(b) ........................................................................11

U.S.S.G. § 4B1.2(c)........................................................................11

U.S.S.G. § 2D1.1(c)(8) (2023) .......................................................11

U.S.S.G. § 5G1.1(b) .......................................................................24

# RULES

6TH C<small>IR</small>. R. 34 ....................................................................................................iv

F<small>ED</small>. R. A<small>PP</small>. P. 34 ....................................................................................................iv

# ADDITIONAL AUTHORITY

Fair Sentencing Act of 2010.................................................................................8, 9

First Step Act of 2018, Pub. L. No. 115-391, 132 Stat 5194 (2018)...............*passim*

Hopwood, Shon, *Second Looks and Second Chances*, 41 Cardozo L. Rev. 83
        (2019) ...........................................................................................................3

McGilton, Mari and Rizk, Sabrina, *Looking Beyond the Sentence Examining
        Policy Impacts on Racial Disparities in Federal Sentencing Across
        Stages and Groups and over Time* 3, Urban Inst. (Jan. 2023) ......................3

Sentencing Reform Act of 1984...............................................................2, 3, 4, 13

S. Rep. 98-225 (1983) .....................................................................................4, 19

*Public Hearing on Proposed Amendments to Compassionate Release Policy
        Statement, Before the U.S. Sent'g Comm'n* (Feb. 23, 2023)..........................4

Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254
        (May 3, 2023)...........................................................................................6, 7

BOP Inmate Statitstics, available:
https://www.bop.gov/about/statistics/population_statistics.jsp;#:~:text=158%2C44
2%20Total%20Federal%20Inmates,Last%20Updated%20July%2025%2C%20202
4 ......................................................................................................................20

## STATEMENT REGARDING ORAL ARGUMENT

Under Sixth Circuit Rule 34(a) and Federal Rule of Appellate Procedure 34(a)(1), Appellant Mario Taylor requests oral argument. Oral argument will allow the parties to answer any questions the Court has about the law and facts.

<u>**JURISDICTIONAL STATEMENT**</u>

The United States District Court for the Northern District of Ohio had original jurisdiction under 18 U.S.C. § 3231, which gives district court's original and exclusive jurisdiction over federal crimes. On February 6, 2007, Mr. Taylor entered a guilty plea to one count of possession of cocaine base with intent to distribute, and one count of conspiracy to distribute cocaine base. (a firearm by a convicted felon. (Non-Document Minutes Entry of February 6, 2007). On May 7, 2007, the district court sentenced Mr. Taylor to 262 months of imprisonment and eight years of supervised release. (R. 77: Judgment, PageID 277-282).

On May 30, 2024, the district court denied a motion for compassionate release filed by Mr. Taylor. (R. 257: Order, PageID 1299-1302). On June 11, 2024, Mr. Taylor filed a timely notice of appeal. (R. 258: Notice of Appeal, PageID 1303). This Court has jurisdiction over Mr. Taylor's appeal under 28 U.S.C. § 1291 because the May 30, 2024 order is a final order.

## ISSUE PRESENTED FOR REVIEW

I.      When the Sentencing Commission acts within its express, congressionally delegated authority, its policy statements are binding on courts unless manifestly contrary to statute. Guidelines § 1B1.13(b)(6) is a valid exercise of the Commission's expressly delegated authority and obligation to define extraordinary and compelling reasons to reduce a person's sentence. The validity of § 1B1.13(b)(6) is supported by the Sentencing Reform Act of 1984 and the First Step Act of 2018, both of which are silent on the issue of a change in law justifying a reduced sentence. Is Guidelines § 1B1.13(b)(6) valid and binding on this Court?

**STATEMENT OF THE CASE AND FACTS**

### A. Legal Background

#### 1. The Sentencing Reform Act of 1984 and Section 3582(c)(1)(A)

Congress has long recognized the need for judicial discretion in modifying terms of imprisonment, understanding that unforeseen circumstances may elevate the defendant's interest in mercy over the state's interest in finality. Shon Hopwood, *Second Looks and Second Chances*, 41 Cardozo L. Rev. 83, 90 (2019). For decades, the mechanism for addressing these changed circumstances was parole, which allowed a federal prisoner to move for release after completing a third of their sentence and was predicated in large part on the criminal justice system's assumption that rehabilitation while incarcerated was a realistic possibility for most prisoners. *Id.* at 91–92. Eventually, however, the parole system fell out of favor as rehabilitation came under fire by new social science which undermined its fundamental premises. Simultaneously, legal scholars found that the parole system, maintained not by judges but by political appointees, produced wild and unpredictable sentencing disparities in similarly situated defendants. Mari McGilton & Sabrina Rizk, *Looking Beyond the Sentence: Examining Policy Impacts on Racial*

3

*Disparities in Federal Sentencing Across Stages and Groups and over Time* 3, Urban Inst. (Jan. 2023).[1]

With rehabilitation now last among equals and the interest in consistency and transparency in federal sentencing ascendant, Congress abolished federal parole with the Sentencing Reform Act ("SRA") of 1984. *Public Hearing on Proposed Amendments to Compassionate Release Policy Statement*, *Before the U.S. Sent'g Comm'n* (Feb. 23, 2023) (statement of Erica Zunkel, Clinical Prof. of L. and Assoc. Dir., U. Chicago L. Sch. Fed. Crim. Just. Clinic). But even then, Congress recognized the need to provide courts a mechanism to reevaluate sentences when circumstances were such that continued incarceration would be "inequitable," as in the case of a terminal illness. S. Rep. No. 98-225, at 121 (1983). That mechanism, known colloquially as compassionate release, permitted a court to consider "extraordinary and compelling circumstances" together with the 18 U.S.C. § 3553(a) factors in determining a prisoner's eligibility for a reduced sentence. 18 U.S.C. § 3582(c)(1)(A). Compassionate release has never been limited to medical status, however, but applied broadly to cases in which "other extraordinary and compelling circumstances justify a [sentence] reduction." *Id.* at 55. Congress did not define "extraordinary and compelling," but it did contemplate the injustice of an "unusually

---

[1] Looking Beyond the Sentence: Examining Policy Impacts on Racial Disparities in Federal Sentencing across Stages and Groups and over Time (urban.org)

4

long sentence" in passing the act. *Id.* In fact, Congress imposed only one substantive limitation, best understood in the context parole's decline in popularity: rehabilitation alone could not be an extraordinary and compelling reason. 28 U.S.C. § 994(t).

While Congress did not define "extraordinary and compelling," it did not leave courts completely adrift. In the same act, it created the Sentencing Commission, to whom it delegated the authority to "promulgat[e] general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A)" that "shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t).

### 2. The First Step Act and Guidelines § 1B1.13(b)(6)

Originally, only the Bureau of Prisons ("BOP") could initiate a § 3582(c)(1)(A) motion. It almost never did, rendering Congress's intent to vest judicial discretion in compassionate release moot.[2] To correct this, Congress passed the First Step Act ("FSA") in 2018, which allowed prisoners themselves to file motions under § 3582(c)(1)(A). Before the Sentencing Commission could update its policy statements in accordance with defendant-filed motions, it lost its quorum.

---

[2] Off. of the Inspector Gen., U.S. Dep't of Just., I-2013-006, The Federal Bureau of Prisons' compassionate Release Program 11 (2013).

Because the existing policy statements covered only BOP-filed motions, this Court concluded that those policy statements were inapplicable to defendant-filed motions. *See United States v. Jones*, 980 F.3d 1098, 1108–11 (6th Cir. 2020). While the Sentencing Commission lacked a quorum, a circuit split developed on the issue of whether enormous disparities between old and current sentences can constitute an extraordinary and compelling reason to grant a reduction in sentence. The First, Fourth, Fifth, Ninth, and Tenth Circuits held that they can;[3] the Third, Sixth, Seventh, Eighth, and D.C. Circuit said they cannot.[4] While the circuit divide deepened, the government opposed several petitions for certiorari, arguing that the Sentencing Commission, not the Supreme Court, was best suited to resolve the split.[5] The Sentencing Commission obliged, and adopted just such a policy statement in 2023 defining "extraordinary and compelling reasons" for prisoner-filed motions, authorizing district courts to consider "non-retroactive changes in the law" in

---

[3] *United States v. Ruvalcaba*, 26 F.4th 14, 24 (1st Cir. 2022); *United States v. McCoy*, 981 F.3d 271, 287–88 (4th Cir. 2020); *United States v. Jean*, No. 23-40463, 2024 WL 3409145 (5th Cir. July 15, 2024); *United States v. Chen*, 48 F.4th 1092, 1094–95 (9th Cir. 2022); *United States v. McGee*, 992 F.3d 1035, 1047 (10th Cir. 2021).

[4] *See United States v. Andrews*, 12 F.4th 255, 260 (3d Cir. 2021); *United States v. McCall*, 56 F.4th 1048, 1050 (6th Cir. 2022) (en banc); *United States v. Thacker*, 4 F.4th 569, 573–74 (7th Cir. 2021); *United States v. Crandall*, 25 F.4th 528, 585 (8th Cir. 2022); *United States v. Jenkins*, 50 F.4th 1185, 1198–99 (D.C. Cir. 2022). In the absence of an applicable policy statement, the Fifth Circuit issued an opinion aligning with these circuits (*See United States v. McMaryion*, 64 F.4th 257, 259–60 (5th Cir. 2023) but withdrew the opinion when the Commission announced it would be promulgating a new policy statement on the issue and recently came to the opposite conclusion in light of that statement. *See United States v. McMaryion*, No. 21-50450, 2023 WL 4118015, at *1-2 (5th Cir. June 22, 2023); *United States v. Jean*, No. 23-40463, 2024 WL 3409145 (5th Cir. July 15, 2024).

[5] *See, e.g.,* Br. for the United States in Opposition to Grant of Certiorari, *Jarvis v. United States,* No. 21-568, 2021 WL 5864543, at *12 (U.S. Dec. 8, 2021) ("And although courts of appeals have reached different conclusions on the issue, the practical importance of the disagreement is limited, and the Sentencing Commission could promulgate a new policy statement that deprives a decision by this Court of any practical significance."); accord Br. for Appellee United States at 51, *United States v. Crandall,* No. 20-3611, ECF No. 16 (8th Cir. filed Mar. 25, 2021). *See also* Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254, 28258 (May 3, 2023) (collecting cases).

"narrowly circumscribed circumstances." Sentencing Guidelines for United States Courts, 88 Fed. Reg. 28254, 28258 (May 3, 2023). Under this new policy statement, a change in law "may be considered in determining whether the defendant presents extraordinary and compelling circumstances, but only where" (1) "a defendant received an unusually long sentence," (2) the defendant "has served at least 10 years of the term of imprisonment," (3) there is a "gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed," and (4) the court gives the "full consideration of the defendant's individualized circumstances." U.S. Sentencing Guidelines Manual § 1B1.13(b)(6).

### B. Factual Background

#### 1. Taylor's Case

In 2006, Mario Taylor, along with four codefendants, was charged in a ten-count indictment for drug trafficking conspiracy violations of 21 U.S.C. §§ 841(a)(1) and 846. (R. 3: Indictment, PageID 9–15). Some months later, Mr. Taylor pleaded guilty to Count One and Count Four of the indictment, pursuant to a written plea agreement. (R. 52: Plea Agreement, PageID 172–80). Per the plea agreement, Mr. Taylor was subject to a statutory penalty range of five to forty years under 21 U.S.C. § 841(b)(1)(B). (R. 52: Plea Agreement, PageID 173). As part of the factual basis of the plea agreement, Mr. Taylor stipulated to possession of 18.78 grams of crack cocaine in Count One, and 22.18 grams of crack cocaine in Count Four. (R. 52, Plea

Agreement, PageID 178-79). Because he had a prior felony drug conviction, Mr. Taylor's statutory range was increased to 120 months to life under 21 U.S.C. § 841(b)(1)(B) and § 851. (R. 52, Plea Agreement, PageID 173). Mr. Taylor's prior convictions classified him as a career offender, raising his total offense level to 34 after a three-level reduction for acceptance of responsibility. (R. 52, Plea Agreement, PageID 175). Combined with a Criminal History Category VI, Mr. Taylor's final guidelines range was 262 to 327 months, and the government agree to recommend a sentence on the low end of that range. (R. 52, Plea Agreement, PageID 175–76).

At sentencing, the district court imposed a within-guidelines sentence of 262 months. (R. 77, Judgment, PageID 278). Mr. Taylor appealed, and this Court granted the government's motion to dismiss it. (R. 81, Notice of Appeal, PageID 289–90; R. 146, Order, PageID 501–02; *United States v. Taylor*, Case No. 07-3735 (6th Cir. June 15, 2009).

## 2. The First Step Act Lowered Mr. Taylor's Statutory Sentencing Range

In December 2018, twelve years into Mr. Taylor's sentence, Congress passed the First Step Act, which allowed courts to reduce sentences for prisoners with "covered offenses." Pub. L. No. 115-391, 132 Stat. 5194 (2018). The Act allows "[a] court that imposed a sentence for a covered offense" to "impose a reduced sentence as if Sections 2 and 3 of the Fair Sentencing Act of 2010 . . . were in effect at the time the covered offense was committed." *See* First Step Act, Title IV, Sec. 404(b).

The Fair Sentencing Act of 2010 reduced the statutory penalties for crack cocaine offenses. Prior to 2010, possession of five to fifty grams of crack cocaine carried with it a statutory range of five to forty years incarceration, and a possible enhancement of ten years to life with a prior felony drug conviction 21 U.S.C. §§ 841(b)(1)(B), 851 (1996). After the Fair Sentencing Act, those penalties apply to possession of 28 to 280 grams of crack cocaine. 21 U.S.C. §§ 841(b)(1)(B), 851 (2018). For offenses involving less than 28 grams of crack cocaine, the statutory range is of zero to twenty years, and zero to thirty years with an enhancement for a prior felony drug conviction. 21 U.S.C. §§ 841(b)(1)(C), 851 (2018).

### 3. Mr. Taylor's Section 3582 Motions

Mr. Taylor first filed for reduced sentence after the passage of the First Step Act, which lowered his statutory sentencing range. (R. 216: Compassionate Release Motion, PageID 829-836). Mr. Taylor exhausted his administrative remedies with the BOP before filing with the district court under 18 U.S.C. § 3582(c)(1)(B). *Id.* at PageID 979-1025. The district court found Mr. Taylor was covered under the First Step Act, but denied the motion, holding that Mr. Taylor's designation as a career offender remained applicable and would result in the same base offense level. (R. 222, Opinion and Order, PageID 868).

Mr. Taylor next filed for compassionate release under 18 U.S.C. § 3582(c)(1)(A) during the COVID-19 pandemic, growing concerned that multiple

health issues rendered him vulnerable to complications from the virus and asserting that the BOP could not implement adequate measures to protect him. (R. 239: Supplemental Motion for Compassionate Release, PageID 979-1025). The government conceded that Mr. Taylor's medical conditions were extraordinary and compelling, but that the § 3553(a) factors weighed against release. (R. 240: Response, PageID 1026). The court agreed and denied the motion. (R. 243, Order PageID 1105). Taylor then appealed to the Sixth Circuit, which affirmed the district court, finding it had not abused its discretion in weighing Taylor's circumstances against the § 3553(a) factors. (6th Cir. Case No. 07-3735, Dkt. 12-2, PageID 6).

In 2022, Mr. Taylor filed a second § 3582(c)(1)(A) motion for compassionate release due to health issues arising from a devastating stroke which left him hospitalized for five weeks and unable to feel the left side of his body. (R. 247: Second Motion, PageID 1119). The district court denied this motion as well, holding that his medical records did not indicate extraordinary and compelling circumstances justifying a reduction in sentence. (R. 249: Denial Order, PageID 1170).

Earlier this year, after the Sentencing Commission adopted Guidelines § 1B1.13(b)(6), Mr. Taylor filed the § 3582(c)(1)(A) motion at issue in this case. (R. 254: Supplemental CR Motion, PageID 1227-1262). He argued that he satisfied the criteria in § 1B1.13(b)(6) based on the gross disparity between his sentence and the sentence he would likely receive today. *Id.* at PageID 1230. Namely, one of Mr.

Taylor's potential career offender predicates would no longer qualify under current law. *Id. See also United States v. Palos*, 978 F.3d 373 (6th Cir. 2020) (holding ORC § 2923.03(A)(1) was categorically overbroad and could not qualify as a controlled substance offense under U.S.S.G. § 4B1.2(b)). There was no intervening arrest between his two other prior convictions, meaning they should have been treated as a single sentence under U.S.S.G. § 4A1.2(a)(2), and thus inapplicable as a career offender predicate. *See* U.S.S.G. § 4B1.2(c). Without that career offender designation, his offense involving between 35 and 50 grams of crack cocaine would result in a base offense level of 21 after acceptance of responsibility. *Compare* PSR ¶ 31 *with* U.S.S.G. § 2D1.1(c)(8) (2023).

With a Criminal History Category VI, Mr. Taylor's guideline range today would be 77 to 96 months, a significantly shorter sentence than his original 262 months. He argued that this stark difference qualifies as an unusually long sentence, of which he has served more than ten years, a sentence that would be significantly lower if imposed today due to a change in law. This would qualify as extraordinary and compelling circumstances warranting a sentence reduction under U.S.S.G. § 1B1.13(b)(6). The district court disagreed, quoting *United States v. McCall*, 56 F.4th 1048, 1066 (6th Cir. 2022): "Nonretroactive legal developments do not factor into the extraordinary and compelling analysis." (R. 257, Order, PageID 1301). *McCall* was decided prior to the Sentencing Commission promulgating § 1B1.13(b)(6), but

the district court found the Sixth Circuit's holding that "extraordinary and compelling" was unambiguous precluded "agency nullification of that decision." *Id.*

Mr. Taylor now appeals.

## SUMMARY OF ARGUMENT

Guidelines § 1B1.13(b)(6) is controlling law. Congress expressly delegated to the Sentencing Commission the authority to define "extraordinary and compelling reasons" that may warrant a reduced sentence. The Commission acted within its authority in including gross disparities in past and present sentences in those extraordinary and compelling reasons to reduce a person's sentence.

Because the Commission exercised its expressly delegated authority in promulgating § 1B1.13(b)(6), it is only invalid if manifestly contrary to statute. First, it is not manifestly contrary to the Sentencing Reform Act of 1984. The Sentencing Reform Act required that the reasons for reducing a sentence must be "extraordinary and compelling," and § 1B1.13(b)(6)'s narrowly tailored relief from gross disparities in sentencing fits the ordinary meaning of those terms. The Commission has established several criteria that reduce the number of inmates eligible for relief, and even those eligible must demonstrate that their individual circumstances warrant sentence reduction. Additionally, the Sentencing Reform Act included only one limitation: rehabilitation alone, no matter how successful, could not constitute an extraordinary and compelling reason. It was not manifestly contrary to statute to conclude that the Act did not implicitly prohibit consideration of changes in the law.

Second, Guidelines § 1B1.13(b)(6) is not manifestly contrary to the First Step Act of 2018. The First Step Act is silent on the definition of "extraordinary and

compelling reasons" and included no limitations on the Sentencing Commission's authority to define them. That Congress chose not to make reductions in crack cocaine offenses automatically retroactive does not prevent courts from incorporating sentencing disparities in their analysis of extraordinary and compelling circumstances. Congress made a single limitation on the Sentencing Commission's authority to define extraordinary and compelling—rehabilitation alone does not qualify—and the Supreme Court has repeatedly rejected the argument that courts should read implicit directives in similar congressional silence. Nor does Guidelines § 1B1.13(b)(6) violate the separation of powers. In fact, the policy statement is an exercise of expressly delegated authority and is consistent with the historical roles the judicial and executive branches have played in sentence reduction.

Finally, this Court's decision in *United States v. McCall* does not supersede Guidelines § 1B1.13(b)(6). The *McCall* Court expressly declined to decide whether the Sentencing Commission could define "extraordinary and compelling reasons" to include changes in the law. Now that the Commission has done so, it is binding law not manifestly contrary to statute.

The district court concluded that this Court's *McCall* decision precludes a later determination by the agency that nonretroactive legal developments may, in fact, factor in to the extraordinary and compelling analysis. Because Guidelines §

1B1.13(b)(6) did not exceed the Commission's authority, this Court should reverse the district court's order and remand it with instructions to consider the disparity between Mr. Taylor's past sentence and the one he would likely receive today.

## ARGUMENT

## I. United States Sentencing Guidelines § 1B1.13(b)(6) is binding law.

### A. Standard of Review.

Guidelines § 1B1.13(b)(6) provides that courts may consider changes in the law when deciding compassionate release motions, subject to four limitations: (1) the prisoner has served more than 10 years (2) "of an unusually long sentence," (3) there is now a "gross disparity" between the sentence imposed and that which would likely be imposed today, and (4) the court has given "full consideration of the defendant's individualized circumstances." U.S. Sentencing Guidelines Manual § 1B1.13(b)(6). The policy statement is a valid exercise of the Sentencing Commission's expressly delegated authority to define what constitutes extraordinary and compelling reasons. It is not manifestly contrary to statute, and this Court's decision in *United States v. McCall*, 56 F.4th 1048 (6th Cir. 2022) (en banc) does not supersede the policy statement. On de novo review, the Court should therefore conclude that the district court erred by finding Taylor ineligible for a reduced sentence. *See United States v. Henry*, 983 F.3d 214, 218 (6th Cir. 2020); *United States v. Curry*, 606 F.3d 323, 327 (6th Cir. 2010).

### B. The Supreme Court affords broad discretion to sentencing courts in considering motions for early release.

The Supreme Court has held that courts may consider changes in law in the context of motions for early release. In *Concepcion v. United States*, the defendant pleaded guilty to one count of distributing five or more grams of crack cocaine. 597 U.S. 481, 487 (2022). Because of the then-applicable difference between crack and powder cocaine, in addition to a career-offender enhancement, his Guidelines range was 262 to 327 months. *Id.* Without those enhancements, his range would have been 57 to 71 months. *Id.* After the passage of the FSAs of 2010 and 2018, Concepcion filed for relief on the grounds that, due to changes in law, he would not have received an enhancement for crack cocaine and would no longer be considered a career offender. *Id.* at 488–89. The district court denied the motion and the circuit court affirmed, joining the side of the circuit split holding that courts may not consider intervening changes in law in deciding a FSA motion. *Id.* at 490. In resolving the circuit split, the Supreme Court put special emphasis on the broad discretion of sentencing courts:

> Federal courts historically have exercised this broad discretion to consider all relevant information at an initial sentencing hearing, consistent with their responsibility to sentence the whole person before them. That discretion also carries forward to later proceedings that may modify an original sentence. Such discretion is bounded only when Congress or the Constitution *expressly* limits the type of information a district court may consider in modifying a sentence.

*Id.* at 491 (emphasis added). Considering the long tradition of federal sentencing discretion in this country, the Supreme Court concluded that only an *express*

limitation in statute or in the Constitution may cabin that discretion. *Id.* at 494. In the case of the § 3582(c)(1)(A) motions at issue here, the only express limitations Congress imposed are: (1) the motions must be supported by "extraordinary and compelling reasons;" and (2) rehabilitation *alone* is insufficient. Congress did not, therefore, proscribe a court's ability to consider non-retroactive changes in the law as a factor in compassionate release.

This Court addressed *Concepcion* in its *McCall* decision and found it inapposite, holding that the Supreme Court did not address the "threshold question of whether any given prisoner has established an extraordinary and compelling reason for release." 56 F.4th at 1061 (quoting *United States v. King*, 40 F.4th 594, 596 (7th Cir. 2022). In the majority's analysis, non-retroactive changes in the law *may* come in, but only after the defendant has demonstrated other extraordinary and compelling circumstances that qualify him for consideration in the first place. This position finds little support in *Concepcion's* text, runs contrary to Congressional intent, and is belied by the Sentencing Commission's circumscribed prerequisites a defendant must meet to qualify for release under § 1B1.13(b)(6). First, and contrary to the majority's interpretation, the *Concepcion* court makes no distinction between a "threshold qualification" and actual consideration of the defendant's circumstances. And why would it? *Concepcion* was a deliberately broad endorsement of judicial discretion at *every* stage of resentencing. *McCall*, 56 F.4th

at 1067 (Moore, J., dissenting). Permitting consideration of non-retroactive changes in the law in one stage but not the other draws an arbitrary line; either the extant sentencing disparity is a worthy factor in deciding compassionate release, or it isn't. Because the Sentencing Commission has since decided that non-retroactive changes in law *may* be extraordinary and compelling, district courts have the discretion to make those determinations on a case-by-case basis, as Congress envisioned they would.

That vision is evidenced by Congress's adoption of § 3582(c)(1)(A) as a "'safety valve' with respect to situations in which a defendant's circumstances had changed such that the length of continued incarceration no longer remained equitable." *United States v. Ruvalcaba*, 26 F.4th 14, 26 (1st Cir. 2022) (quoting S. Rep. No. 98-225, at 55-56, 121 (1983), *as reprinted in* 1984 U.S.C.C.A.N. 3182, 3238-39, 3304). In drafting the compassionate release statute, Congress expressly contemplated that "unusually long sentence[s]" or situations where "the sentencing guidelines for the offense of which the defender was convicted have been later amended to provide a shorter term of imprisonment" may serve as extraordinary and compelling reasons. S. Rep. No. 98-225, at 55-56 (1983).

Finally, the government has argued that the Sentencing Commission's policy statement permitting district courts to *consider* affording relief to those defendants whose sentences were predicated on now unconstitutional or illegal statutes was

itself an unconstitutional exercise of the Commission's mandate, apparently in fear that the section will become "a quasi-parole system." *United States v. Jean*, No. 23-40463, 2024 WL 3409145 (5th Cir. July 15, 2024). This argument would carry more weight had the Sentencing Commission granted automatic review of sentencing disparities above a certain threshold, but it did not. Not only did it not *require* courts to find sentencing disparities extraordinary and compelling, but the Commission also put additional barriers in place to further narrow the eligible class of defendants. A small percentage of the total BOP inmate population (158,442 as of July 25, 2024)[6] would reach the ten year mark in their sentences in any given year. An even smaller percentage of *that* population will have been sentenced under statutes that have since been revised and not made retroactive. And only a yet smaller population will be able to persuade a court that the disparity in their sentences is an extraordinary and compelling reason to grant a reduction in that sentence.

### C. Guidelines § 1B1.13(b)(6) is a valid exercise of the Commission's expressly delegated authority.

Guidelines § 1B1.13(b)(6) does not exceed the authority Congress delegated to the Sentencing Commission. The Sentencing Commission is a "peculiar institution"[7] with "unusual explicit power"[8] and a broad delegation of authority.

---

[6] BOP : Inmate Statistics
https://www.bop.gov/about/statistics/population_statistics.jsp;#:~:text=158%2C442%20Total%20Federal%20Inmates,Last%20Updated%20July%2025%2C%202024.
[7] *Mistretta v. United States,* 488 U.S. 361, 384 (1989).
[8] *Braxton v. United States*, 500 U.S. 344, 348 (1991).

*McCall* recognized that Congress had explicitly delegated—even expressly mandated—the ability to define "extraordinary and compelling" to the Sentencing Commission. 56 F.4th at 1053 (quoting 28 U.S.C. § 994(t)). The deepening circuit split on whether non-retroactive changes in the law constitute extraordinary and compelling reasons compelled the Commission to act. That obligation arises from (1) the Commission's statutory duty to remedy unwarranted sentencing disparities and (2) the Supreme Court's expectation that the Commission will review and revise the Guidelines and policy statements. *United States v. Braxton*, 500 U.S. 344, 347–48 (1991).

Including non-retroactive changes in law as a possible extraordinary and compelling reason to reduce a defendant's sentence comports with Congress's intent in creating the Sentencing Commission in the first place, namely, to "provide certainty and fairness in meeting the purposes of sentencing" and "avoiding unwarranted sentencing disparities." 28 U.S.C. § 991(b)(1)(B). The extant circuit split, prior to the promulgation of the policy statement, created just the disparity the Commission was tasked to rectify. In resolving the circuit split in favor of non-retroactive changes in law, the Commission corrected what was becoming a geographical fluke. And it isn't only Congress that compelled the Commission to act. The Supreme Court previously declined to second-guess a Commission interpretation of a Guideline, holding that "Congress necessarily contemplated that

this Commission would periodically review the work of the courts and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." *Braxton v. United States*, 500 U.S. 344, 348 (1991). The Supreme Court has also held that "prior judicial constructions of a particular guideline cannot prevent the Commission from adopting a conflicting interpretation." *Stinson v. United States*, 508 U.S. 36, 46 (1993). That the Supreme Court repeatedly rejected applications for certiorari on this issue is telling;[9] it was waiting for the Commission to resolve the circuit split. The Supreme Court must have contemplated that it was possible, even likely, that the Commission would resolve it in favor of nonretroactivity. Were that an unconstitutional interpretation of "extraordinary and compelling," the Court could have intervened in any number of cases before the Commission promulgated its policy statement. That it did not demonstrates that the Court was content to allow the Commission's interpretation to stand.

1. ***McCall* is distinguishable from this case, but this Court can and should revise its recent ruling on "extraordinary and compelling" in accordance with the Sentencing Commission's interpretation.**

When the Sentencing Commission chooses to issue a new definition, as it has done with § 1B1.13(b)(6), its definition must prevail. *See National Cable & Telecommunications Association v. Brand X Internet Services*, 545 U.S. 967, 982–

---

[9] See *Andrews v. United States*, 142 S. Ct. 1446 (2022) (denying cert); *Jarvis v. United States*, 142 S. Ct. 760 (2022) (denying cert); *Crandall v. United States*, 142 S. Ct. 2781 (2022) (denying cert); *Thacker v. United States*, 142 S. Ct. 1363 (2022) (denying cert).

83 (2005). To assert otherwise would subvert the role Congress envisioned this Commission playing in the compassionate release system: a centralized decision-making authority tasked with ensuring fairness and transparency in federal sentencing and avoiding unwarranted sentencing disparities. In fact, the Fifth Circuit has recently reversed year-old precedent to comply with the Sentencing Commission's new policy statement. *See United States v. Jean*, No. 23-40463, 2024 WL 3409145 (5th Cir. July 15, 2024) ("It is within a district court's sound discretion to hold that non-retroactive changes in the law . . . sufficiently support a motion for compassionate release . . . . For this court to hold otherwise would be to limit the discretion of the district courts, contrary to Supreme Court precedent and Congressional intent.").

*McCall* itself declined to decide whether the Sentencing Commission "could issue a new policy statement that describes 'extraordinary and compelling reasons' in a way that is inconsistent with our interpretation of the statute's language." 56 F.4th at 1054 n.3. Despite this omission, the district court concluded that this Court's interpretation of "extraordinary and compelling" unambiguously excluded non-retroactive changes in law foreclosed any subsequent, contrary interpretation by the Sentencing Commission, citing *Neal v. United States*, 516 U.S. 284, 290 (1996). (R. 257, Order, PageID 1301). In that case, the Supreme Court upheld its prior interpretation of a statute providing a mandatory minimum sentence for trafficking

in an LSD "mixture or substance" against the petitioner's interpretation of a subsequent Sentencing Commission comment on a new method for calculating substance weight to assign a base offense level. *Id.*

However, *Neal* is not applicable to this case for two reasons. First, the Supreme Court expressed doubt that the petitioner's interpretation of the Sentencing Commission's was the correct one: "[I]t is doubtful that the Commission intended the constructive-weight method of the Guidelines to displace the actual-weight method that *Chapman* requires for statutory minimum sentences." *Id.* at 293. Moreover, the Supreme Court pointed out that the comment ends with: "[n]onetheless, this approach does not override the applicability of 'mixture or substance' for the purpose of applying any mandatory minimum sentence (*see Chapman;* § 5G1.1(b))," suggesting that the Commission would defer to the statutory calculation were it to conflict with the Commission's. *Id.* at 294. There is no such ambiguity here; the Commission promulgated an unambiguous policy statement consistent with an express mandate from Congress to define "extraordinary and compelling." There is no need for the Supreme Court to revisit its definition.

Next, *Neal* is best understood in the context of Supreme Court, not circuit, precedent. Were it otherwise, the Commission could not fulfill its role in resolving circuit splits as Congress intended it to. The Supreme Court's consistent rejection of

petitions of certiorari are evidence that it did not feel the need to supplant the Commission's role in that arena, whatever the Commission eventually decided.

*McCall* is distinguishable on an additional ground. The background principle that *McCall* relied on and cited often is that judicially decided criminal procedure rules generally do not apply retroactively. F.4th at 1056–58, 1061. As a district court in this circuit recently held, "[b]ecause the background principle is specific to criminal procedure rules, to the extent McCall still has force, *McCall* would only prevent courts from considering judicial decisions that make nonretroactive criminal procedure rule changes as extraordinary and compelling." *United States v. Cornell*, No. 1:03-CR-00431-2, 2024 WL 3532924, at *3 (N.D. Ohio July 25, 2024). The First Step Act of 2018 was not a change in criminal procedure, but in statute. Because *McCall* does not apply to statutory changes, and because this Court's previous interpretation of "extraordinary and compelling" must give way to the Sentencing Commission's, this Court should find that the district court abused its discretion in failing to consider the disparity between the sentence Taylor received with the one he would receive if sentenced today.

### 2. Mr. Taylor Qualifies for sentence reduction under § 3582(c)(1)(A).

Mr. Taylor meets all the prerequisites to qualify for sentence reduction under 18 U.S.C. § 3582(c)(1)(A) and Guidelines § 1B1.13(b)(6). He has served over ten years (207 months, as of August 7th) of his 262-month sentence. Were he to be

sentenced today for the same conduct, his Guidelines range would be 77 to 96 months, a difference of approximately 16 years. *See infra* Section IV.B.1. This qualifies as an unusually long sentence and is by itself an extraordinary and compelling circumstance justifying a sentence reduction under § 1B1.13(b)(6). But the sentencing disparity is not the only factor. Mr. Taylor has significant health issues: he remains unable to feel the left side of his body after a devastating stroke, suffers from high blood pressure, prediabetes, and obesity, conditions which make prison life significantly more difficult. Dkt. 254, PageID 1229. While the district court disagreed that these medical conditions were extraordinary and compelling on their own, it also rejected Guidelines § 1B1.13(b)(6). Viewed in combination with the sentencing disparity, however, the district court should use its discretion to reach the opposite conclusion.

Next, Mr. Taylor's § 3553(a) factors demonstrate he is not a risk to the public. Mr. Taylor is not the same man he was 18 years ago. Physically, he has suffered and is still recovering from a debilitating stroke, which diminishes any risk to the public. Dkt. 254, PageID 1233. Mentally, Mr. Taylor has made impressive rehabilitative progress while incarcerated. He has completed several education and work-training programs and has by all accounts been a model prisoner. *Id.* at PageID 1233. Finally, granting him early release will not undercut the seriousness of his offense or the deterrent effect of incarceration, as no offender with similar conduct would face a

262-month sentence today. All these factors combine to make his risk of recidivism low. Mr. Taylor requests this Court grant him compassionate release, to be released to home-confinement, so he can receive the medical treatment he needs.

## CONCLUSION

The Sentencing Commission validly exercised its expressly delegated authority by adopting Guidelines § 1B1.13(b)(6). This Court should reverse the district court's order refusing to consider nonretroactive changes in the law and remand for the court to exercise its discretion to reduce Mr. Taylor's sentence.

Respectfully submitted,
*/s/ Andrew Byrd*
ANDREW BYRD
Attorney at Law
Florida Bar: 118587
Office of the Federal Public Defender
1660 W. 2nd Street, Suite 750
Cleveland, Ohio 44113
Phone: (216) 522-4856
Fax: (216) 522-4321
andrew_byrd@fd.org

Attorney for Mario Taylor

# CERTIFICATE OF SERVICE AND CONFORMITY

1.     I certify that on September 4, 2024, a copy of Appellant Mario Taylor's Opening Brief was filed electronically.  Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

2.     This brief complies with the 13,000 type-volume limitation of Fed. R. App. P. 32(a)(7)(B) as this brief contains 5,766 words in proportionally spaced font, Times New Roman, excluding the parts exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

*/s/ Andrew Byrd*
ANDREW BYRD

Attorney for Mario Taylor

# DESIGNATION OF DISTRICT COURT DOCUMENTS

Pursuant to Sixth Circuit Rules 28(c) and 30(b), Appellant Mario Taylor hereby designates the following relevant district court documents:

| Docket # | Description | Page ID# |
|---|---|---|
| 3 | Indictment | 9 – 15 |
| 52 | Plea Agreement | 172 – 180 |
| 77 | Judgment | 277 – 282 |
| 81 | Notice of Appeal | 289 - 290 |
| 216 | Compassionate Release Motion | 829 - 836 |
| 222 | Opinion and Order | 865 - 869 |
| 239 | Supplemental Motion for Compassionate Release | 979 - 1025 |
| 240 | Response | 1026 - 1029 |
| 243 | Order | 1104 - 1106 |
| 247 | Second Motion | 1118 - 1149 |
| 249 | Denial Order | 1169 - 1171 |
| 254 | Supplemental Compassionate Release Motion | 1227 - 1262 |
| 257 | Order | 1299 – 1302 |
| 258 | Notice of Appeal | 1303 |